Sullivan, J.
This is an application by petitioner under article 78 of the Civil Practice Act to annul orders of the Commissioner of Motor Vehicles whereby petitioner’s operator’s license was revoked and his certificate of registration was suspended for the reason that he had been convicted of a third speeding violation committed within a period of eighteen months.
Petitioner questions the validity of the third conviction on two grounds: First, that the Justice of the Peace, before whom petitioner pleaded guilty for violation of the New York State Thruway speed regulation, failed to instruct him in accordance with the provision of section 335-a of the Code of Criminal Procedure to the effect that, upon conviction, his license to drive and certificate of registration would be subject to suspension and revocation as prescribed by law and Second, that, at the time of his arraignment, he asked the Justice of the Peace if a conviction for speeding on the Thruway would have any effect upon his license insofar as revocation or suspension was concerned and that, in reply, the Justice informed the petitioner that exceeding the speed limits on the New York State Thruway would not count as a traffic infraction nor adversely affect the petitioner’s license and that he relied upon this information given by the Justice when he entered a plea of guilty to the charge.
In his petition, the petitioner states that he was never handed nor delivered a summons by the arresting officer nor by the Justice but that the officer, at the time of the arrest, informed the petitioner that he had to appear before Justice of the Peace Charles C. Bidinger at Canastota, the next night at 8 o’clock.
In his answer, the Commissioner of Motor Vehicles avers that a summons or ticket, which was issued to the petitioner by the arresting officer at the time of his apprehension, contained the statement, which is required by section 335-a, printed in bold red type in size equal to at least 12 point type and that this constituted compliance with the requirements of the section.
The commissioner also denies that the Justice informed the petitioner that a conviction for speeding on the Thruway would not have any effect upon his license insofar as revocation or suspension was concerned.
In view of this conflict in the facts, this court held a hearing at which the petitioner.testified that, after dark, he was alone while driving his automobile on the Thruway when he was *284 stopped by a State Trooper; that the trooper then informed petitioner that he had been exceeding the speed limit; that, while the two sat in the front seat of the police car, the trooper had a pad of a size larger than the pad of summonses which are in use upon which he wrote something after the petitioner exhibited his operator’s license and certificate of registration to the trooper, who then told the petitioner that he would have to go to Mr. Bidinger’s place at Canastota on a specified date. Petitioner further testified that the trooper did not hand him a ticket or summons or any paper, at any time, nor was he handed any ticket or summons or any paper by any person between the date of his apprehension on the Thruway and the time of his plea of guilty to the charge. (It is to be noted that, on cross-examination, the petitioner admitted that he had written a letter to the Commissioner of Motor Vehicles, after he had received the notices of the revocation, and suspension wherein he stated, in substance, “ that to the best of my knowledge I did not receive a written summons ” at the time of his apprehension.) The petitioner also testified that, when he appeared before Justice of the Peace Bidinger, the arresting officer was not present; that the petitioner asked the Justice if a plea of guilty would count against his license to which the Justice replied that a conviction for violating the Thruway speed regulations was a misdemeanor and that he could have several of those. The petitioner also testified, in substance, that the Justice did not advise him previous to his plea of guilty with respect to the provisions of section 335-a of the Code of Criminal Procedure.
The arresting officer, Trooper Elliot W. Singleton, testified substantially the same as did petitioner, except that he swore that he issued and handed a summons to the petitioner while the two of them sat in the trooper’s automobile. A certified photostatic copy of the Uniform Traffic Ticket New York State Police Thruway Detail, No. 146317, was offered in evidence by respondent. The trooper testified that the original of this had been handed to petitioner at the time of his apprehension. It contained petitioner’s name, address, driver’s license number, date of petitioner’s birth, his employer’s name and address, the name and address of the Justice before whom he was to appear, the date and time, the charge, the date of the violation, the place, petitioner’s registration number, make and year of car and the trooper’s signature. There was also introduced in evidence a blank original Uniform Traffic Ticket which the trooper described as the same as the one issued and handed to petitioner, except for the number. This exhibit contains, in *285 red bold type at the bottom of the summons, the following:
‘‘ A PLEA OF GUILTY TO THIS CHARGE IS EQUIVALENT TO A CONVICTION AFTER TRIAL. IF YOU ARE CONVICTED, NOT ONLY WILL YOU BE LIABLE TO A PENALTY, BUT IN ADDITION YOUR LICENSE TO DRIVE A MOTOR VEHICLE OR MOTOR CYCLE, AND YOUR CERTIFICATE OF REGISTRATION, IF ANY, ARE SUBJECT TO SUSPENSION AND REVOCATION AS PRESCRIBED BY LAW. ’’
The pad, from which the original summons was detached, was also introduced. It contained pages or slips which were carbon copies of several original summons, among which was No. 146317, which had been issued at various times to violators. These several pages were consecutively numbered. (It is interesting to note that the next numbered summons on this pad was issued to John W. Cotney, who is a neighbor of the petitioner and who appeared before Justice Bidinger at the same time as did the petitioner.) The witness also identified page 265 of the log book or station blotter which is a book maintained at the trooper’s barracks in which the several troopers, upon completion of their respective duties, daily, make entries of arrests made during their respective tours of duty. In apparent regular order, there appears in this book, the name and address of petitioner and the violation with which he was charged. This information in the log book is identical with that contained in the summons. The entry in the log book which follows the petitioner’s is that of the afore-mentioned John W. Cotney.
In considering the testimony, this court comes to the conclusion that the petitioner forgot that the trooper issued and handed to him the summons at the time of his apprehension. This court finds that summons No. 146317 Uniform Traffic Ticket New York State Police Thruway Detail was issued to the petitioner by Trooper Singleton at the time of his apprehension on November 11, 1954 and that it contained the statement which constituted compliance with section 335-a of the Code of Criminal Procedure as therein prescribed.
However, it is the contention of the petitioner that, even if the summons, with the statement thereon, had been issued to the petitioner, he should have been advised by the Justice of the Peace on the arraignment with respect to the provision of section 335-a of the Code of Criminal Procedure. Upon the hearing, as has been written above, petitioner testified that the Justice failed to read the provisions of section 335-a of the Code of Criminal Procedure. This fact is borne out by Justice Bidinger’s affidavit, which is a part of the moving papers, wherein he states: “At that time, when Casper Paul Scalia was arraigned before your deponent to answer said charge, your *286 deponent was in an upset frame of mind and was on Ms way to attend a wake for Ms deceased aunt. That further because of your deponent’s anxiety caused by a death in his family, your deponent did not instruct or inform the defendant Scalia of the statutory warning provided by Section 335-a of the Code of Criminal Procedure.” There was no testimony offered by the commissioner, at the hearing, to contradict this fact, except as hereinafter stated. As a part of the moving papers, there is an affidavit by John W. Cotney, which reads, in part: “ That he resides in the City of Utica, New York, that your deponent was present when Casper Paul Scalia (petitioner supplied) was arraigned before Justice of the Peace, Charles C. Bidinger, Canastota, New York, on November 16,1954, to answer a charge of violating the Thruway Authority Speed Limits. * * * Deponent further states that Justice Bidinger did not at any time advise Scalia, in any manner whatsoever, of the following: (The wording of Section 335-a, second paragraph of the Code is set forth). That at the time of the arraignment of Scalia, as aforesaid, Justice Bidinger informed Scalia and your deponent that he was anxious to dispose of the proceeding at that time because he was due to attend a wake for a deceased aunt. ’’
The respondent, as part of his answer, offers the certification of the Justice to the commissioner that the instruction required by section 335-a had been given to petitioner. However, this evidence is overcome by the Justice’s subsequent affidavit, as well as the one of Cotney’s and the petitioner’s testimony at the hearing.
This court finds that, on the arraignment of the petitioner on November 16, 1954, before Justice of the Peace Bidinger, he did not read the instruction contained in section 335-a of the Code of Criminal Procedure as prescribed by that section.
However, this court finds that the Justice of the Peace was not required to read this section to the petitioner because of the amendment to section 335-a of the Code of Criminal Procedure which was added by chapter 664 of the Laws of 1954. This bill was apparently S. Int. No. 646, Pr. No. 3241 and A. Int. No. 853, Pr. No. 2030. This amendment reads: “ The giving of the foregoing' instructions by means of a statement printed in bold red type in a size equal to at least twelve point type, upon a summons or ticket issued to a person charged with any such violation shall constitute compliance with the requirements of this section.”
The memorandum, which accompanied this legislation to the Governor, reads, as follows: ‘‘ This bill amends Section 335-a of the Code of Criminal Procedure to provide that the instruc *287 tions which must be given by a magistrate at the time of arraignment to persons charged with traffic violations relating to the operation of vehicles may be given by printing the instruction in bold red type, in a size equal to at least twelve point type, upon a summons or ticket issued to such person.
“ Section 335-a of the Code of Criminal Procedure was amended by Chapter 288 of the Laws of 1953 so as to provide for a uniform instruction to be given in all such cases. This bill permits such instruction to be given by printing the same upon the summons or ticket, where the defendant will have an adequate opportunity to read and understand the same.
“ The giving of the warning in such a manner would tend to offset, in part, the result of two cases, Matter of DeLynn, 305 N. Y. 501 and Matter of Payne, Supreme Court, Monroe County, as yet unreported. The former held that the warning must be given in “ persistent violator ” cases at the time of the arraignment of a motorist on the last charge which, upon conviction; results in his being a “ persistent violator ”, and the latter held that the warning must be given at the time of arraignment of a motorist on every charge which is used as the basis for a determination that he is a “ persistent violator ”. Since the court does not always have adequate information before it to determine whether a person is a persistent violator, or whether the Commissioner of Motor Vehicles will later make such a determination upon examination of the motorist’s entire record, and because a person sometimes never appears before a magistrate, taking advantage of statutory provisions which permit disposition of certain traffic cases through a Traffic Violations Bureau or by payment to a court clerk, under regulations such as are now in force in New York City and Nassau County, the giving of the warning in the manner provided by this bill would insure that the defendant was given the proper warning in every case in which a summons or ticket was issued. Then, if the Commissioner later determines that the defendant is a persistent violator, a revocation or suspension based upon such ground will not be invalid because of a failure to comply with the provisions of Section 335-a of the Criminal Code.
“ In those cases in which a defendant is not given a summons or ticket, the court will still be required to give the statutory warning personally to the defendant.”
Since the Legislature has the power to prescribe the nature of the warning to be given one who is charged with a traffic violation, it would seem to follow that it has the power to prescribe the manner in which it is to be given. The intent and purpose of the amendment is plain. Therefore, the peti *288 tioner’s application to annul the commissioner’s revocation of the operator’s license and the suspension of the registration on the ground that the Justice failed to instruct the petitioner, on his arraignment, of the provisions of section 335-a of the Code of Criminal Procedure is denied.
However, the contention of the petitioner that he relied upon the statement of the Justice with respect to the effect of an erroneous conviction on his license, which was given to him by the Justice of the Peace at the time of the arraignment, requires consideration. From the moving papers and from the testimony of petitioner at the hearing, it is obvious that the Justice of the Peace did advise the petitioner that his conviction would not have any effect upon his license insofar as revocation or suspension was concerned. The petitioner relied upon this assurance. In his affidavit, Justice Bidiitger stated: “ Further, that at the time of the defendant Scalia’s arraignment he inquired of your deponent whether a conviction for violating the speed limits on the Thruway would have any effect upon his license insofar as revocation or suspension was concerned. That your deponent, in answer to the defendant Scalia’s inquiry, informed him that the conviction for violating the Thruway speed regulations was in a category all by itself, it being a misdemeanor, it would not count as a traffic infraction and would not adversely affect the defendant under the Vehicle and Traffic Law which makes three speeding convictions within 18 months grounds for mandatory revocation of a license. That your deponent believes that the defendant Scalia relied upon that information when he pleaded guilty to the charge and would not have so pleaded had the defendant been clearly informed otherwise.”
The Justice’s affidavit is corroborated by the one of John W. Cotney, who was present at the petitioner’s arraignment.
Confronted with this state of facts, this court is inclined toward the expression of Mr. Justice Halpern, writing in Matter of Arcuri v. Macduff (286 App. Div. 17, 21): “ It may well be, as the petitioner contends, that, if the Magistrate nevertheless undertakes to give advice, he must give it accurately and erroneous advice may, under some circumstances, have the effect of vitiating the statutory warning.”
In the instant case, it appears that the opinion expressed by the Magistrate, in answer to petitioner’s inquiry as to the effect of a conviction on his license, was inaccurate, erroneous and misleading. The petitioner relied upon it in pleading guilty.
Reviewing the sequence of events in the matter before the pourt, petitioner was convicted on his plea for speeding op *289 November 16, 1954. Seven months later, on June 8, 1955, the Magistrate certified the conviction to the commissioner. Twelve days later, petitioner’s operator’s license was revoked and his registration suspended. The commissioner was served with the order to show cause and the accompanying affidavits, by registered mail, within a day or two of August 11, 1955. The petition and affidavits accompanying it state that the Justice of the Peace had undertaken to give advice to the petitioner which was inaccurate, erroneous and misleading and that the petitioner relied upon the advice to his detriment. With this information before him, it seems to this court that, after the commissioner discovered this fact from the motion papers, he should have held a hearing to determine the truth of the matter and if he found that the Justice did erroneously advise the petitioner, he should have annulled the orders of revocation and suspension. (Matter of Arcuri v. Macduff, supra.)
This court has given consideration to the advisability of permitting the Commissioner of Motor Vehicles to elect, at this time, to hold a hearing as to the claim of the petitioner that he was mistakenly, erroneously and inaccurately advised by the Justice, at the time of his arraignment, as to the effect of a plea of guilty on his license and registration. However, in view of the uncontradicted testimony of the petitioner at the hearing and the affidavits of the Justice and Cotney, which are undisputed, except by denial in the answer, no question of fact is presented which requires such a hearing.
Therefore, this court finds that the Justice of the Peace, at the time of the arraignment of the petitioner and in answer to his inquiry with regard to the effect of a conviction on his operator’s license and registration, undertook to give advice to petitioner which was erroneous, inaccurate and misleading and that the petitioner relied upon the advice in pleading guilty.
The orders by the Commissioner of Motor Vehicles revoking his operator’s license and suspending his registration are annulled on this ground.
Order accordingly, without costs to either party.